## FERNSEL *v.* RECTOR ET AL.

TAX.—*Assessment of Personal Property.—Statute.—Construction of.*—By section 276 of the tax act of December 21st, 1872, the duty of assessing personal property for taxation for the succeeding two years was devolved on the county appraisers of real estate chosen at the October election in 1872.

SAME.—*Bond and Oath of Appraisers.*—Such real estate appraisers were not required to take an additional oath of office, or to file an official bond as assessors, and the failure to file such oath and bond did not authorize a county auditor to appoint another person to assess personal property for taxation.

SAME.—*Legislative Power.*—It was competent for the legislature to confer on such appraisers the additional duty of assessing personal property.

From the Clay Circuit Court.

*W. W. Carter* and *S. D. Coffey,* for appellant.

*G. A. Knight,* for appellees.

Downey, J.—The appellant filed in said court a verified petition, in which he represented that on the 31st day of January, 1873, William H. Rector, Oliver B. Johnson, and George Eckert, were and still are the Board of Commissioners of Clay County, Indiana, etc.; that at the same time James H. Hoskins was the auditor of the county; that at the general election in said county, in October, 1872, to wit, October 8th, 1872, he was legally and duly elected real estate appraiser for said county; that on the 21st day of October, 1872, he received from the clerk of the circuit court of said county a certificate of his election, a copy of which is set out in the complaint; that on the said 21st day of October, 1872, he was duly qualified, and took upon himself the duties of said office ; a copy of the oath of office is also made part of the complaint.

It is further alleged, that by act of the General Assembly of December 21st, 1872, he was constituted county assessor of said county for two years from the 8th day of October, 1872, by virtue of his election as real estate appraiser, with the right to hold the same until his successor should be elected and qualified ; and he says he was, at all times after the taking effect of said act, ready and willing to give bond, with good and sufficient sureties, to the acceptance of the board of county commissioners of said county, in the sum of five thousand dollars, etc., and to take and subscribe an oath of office to be entered on said bond, etc.; but he says that said board were, at no time after the taking effect of said act, until January 31st, 1873, in session, and that he had no opportunity until said time of making and presenting to them for their approval said bond; that on the said 31st day of January, 1873, the said board of commissioners, for the first time after the passage of said act, met in special session at the auditor's office, in the court-house, etc., by call of the auditor of said county, for the purpose of approving the bond of the assessor of the county; that immediately upon the meeting of said board, he tendered to them

a good and sufficient bond, in the penal sum of five thousand dollars, conditioned, etc., duly subscribed and acknowledged, etc., which bond had thereon an oath of office, subscribed by him, that he would faithfully, etc., a copy of which bond, with said oath indorsed thereon, is filed with the complaint and made part of it; that when he so tendered said bond to said board of commissioners, he demanded of them the approval thereof, and demanded of the said Hoskins that he administer to him the oath of office indorsed thereon and subscribed by him; but said board refused to approve said bond, and said Hoskins refused to administer to him the said oath of office, alleging as a·reason therefor that more than ninety days had expired since the election of petitioner; that upon such refusal the said Hoskins pretended that said office had become vacant by reason of said bond not having been approved within ninety days after the election of the petitioner; and by reason of said pretended vacancy the said auditor appointed the said defendant, Andrew J. Montgomery, to said office, and he executed bond on said 31st day of January, 1873, which was approved by the board, and said Hoskins administered to him the oath of office as assessor of said county. He then alleges that on the 1st day of April, 1873, he demanded of the said auditor the necessary books and papers to enable him to assess said county, which were refused, and were handed over to said Montgomery, etc.; that Montgomery is proceeding to assess said county, and is claiming to be the assessor thereof, and said board of commissioners and said Hoskins are claiming that said Montgomery is entitled to the emoluments of said office, and are threatening to make and issue orders of said county payable to him for his services in assessing said county; that Montgomery is insolvent, as he believes, and if the emoluments of said office are paid over to him, the same will be wholly lost to your petitioner; and he says that said Montgomery is threatening to draw from said county fees due the assessor thereof for assessing the same; wherefore he moves the court for a writ of mandate against the said board of com-

missioners, and against said Hoskins as such auditor, compelling the said board to approve said bond, and the said auditor to administer said oath of office to him, etc.; and that said board of commissioners and said auditor may be temporarily restrained, and upon the final hearing enjoined, from drawing any order in favor of said Montgomery for the fees of said office, and that said Montgomery be enjoined from drawing said fees and from further interfering with the office of your petitioner, and for all other relief, etc.

An undertaking, in the usual form required in case of restraining orders, was tendered with the complaint.

On this petition, the appellant moved the court for an alternate mandate against the defendants, the commissioners and the auditor, and for a temporary restraining order against the commissioners, the auditor, and the defendant Montgomery.

The defendants appeared and moved the court to grant them leave to file counter affidavits in resistance of the motion of the appellant. This latter motion the court overruled, and thereupon also overruled the motion of the petitioner, on the ground that the petition was insufficient, and dismissed the petition, to which ruling there was an exception by the petitioner.

By the second section of an act of the legislature, of December 21st, 1858, Acts 1858, p. 4, and 1 G. & H. 85, it is provided, that "at the annual election of October, A. D. 1863, and every five years thereafter, an appraiser shall be elected by the people thereof, who shall, after the 1st day of January thereafter, proceed to discharge the duties required by this act." Under this act, in October, 1872, the appellant was elected to the office of appraiser, the duties of which were then limited to the act of appraising real estate. He qualified, as alleged in the petition, by taking the oath of office prescribed by the act, and entered upon the discharge of his duties.

When the legislature passed the law of December 21st, 1872, there would be no general election until October,

1874, and hence it was provided by sec. 276 of that act, that "the persons elected in the different counties of the State at the last October election as appraisers of real estate are hereby constituted county assessors, within the meaning and purpose of this act, to hold their offices as such for two years from the said election as such appraisers, and until their successors are elected and qualified."

It becomes a question whether the legislature, in imposing upon the appraisers of real estate the additional duty of assessing the personal estate, contemplated that they should give bond and take an additional oath of office. Or, in other words, did the legislature, when it made the appraisers of real estate assessors of both real and personal property, intend that they should give bond and take an additional oath of office, as if elected to the office of assessor under said act in the year 1874, or afterward? Sections 107 and 108 of the act are relied upon by counsel for appellee, as requiring the bond and additional oath. Section 107 is as follows: "At the general election in October, A. D. 1874, and every two years thereafter, there shall be elected in each county in the State an assessor for such county, who shall hold his office for the term of two years, and until his successor be elected and qualified, and shall perform all such duties as now are or may hereinafter be required to be performed by assessors. Such assessor, previous to entering upon the discharge of the duties of his office, shall give bond with good and sufficient security to the acceptance of the board of county commissioners, in the sum of five thousand dollars, payable to the State of Indiana, and conditioned for the faithful and impartial discharge of the duties of his office, according to law, and shall take and subscribe an oath or affirmation, to be indorsed on his bond, that he will faithfully and impartially discharge the duties of his office to the best of his skill and ability, and the bond so indorsed shall be deposited with the county auditor, and the said auditor is hereby authorized to administer the oath of office aforesaid."

Section 108 is as follows: "If any county assessor shall

not, within ninety days after his election, give bond and security or shall not take and subscribe the oath or affirmation required by the preceding section, the said office shall be considered vacant, and the county auditor shall at once fill such vacancy by appointment, and the person appointed to fill the vacancy shall give bond and take the oath as required in the preceding section."

Counsel for appellees says: "In the argument of the learned counsel for appellant, it is conceded that the provisions of the several sections above referred to apply to persons who were elected real estate appraisers at the October election preceding the passage of this act. In fact, the affidavit of the relator, upon which he based his application for a writ of mandate, treats this law as applicable to his case, and seeks to place himself within its provisions by asking the interposition of the court in his behalf, viz., to compel the county board to approve his bond, and the auditor to administer to him the oath of office."

This appears to be a misapprehension. We find this statement in the brief of counsel for appellant: " We are inclined to the view, that the real estate appraiser being a duly qualified officer, the legislature intended to confer upon him additional duties, without going through the formality of again qualifying. Out of abundant caution, however, the appellant here offered to comply with the provisions of section 107 of said act."

Had such a concession been made by counsel, it could not have been binding upon the court.

In our opinion, the sections of the act in question do not require the real estate appraiser to execute any bond, or to take any oath, in addition to that which he had already taken. The legislature had not required any bond of the real estate appraiser, under the act of December 21st, 1858. While there is reason for an official oath, there is little reason for an official bond from such an officer. It is not any more unreasonable to suppose that the legislature would confer upon the appraiser the power to assess personal property, than

that they would confer upon him power to appraise real estate without a bond.   There is some confirmation of this view of the question in the fact, that while the legislature was intending to give ninety days in which persons elected assessors under the act might give bond, etc., only a fraction of that time would be allowed to the appraisers of real estate, if the section of the act should be construed as applying to them, as they would have only ninety days from the October election in 1872.   It was competent for the legislature to confer upon the real estate appraisers the additional duty of assessing the personal property of the county, without requiring of them any bond, or any additional oath, and we think by section 276 of the act it has done so.   Had it been intended to require of them a bond, and an additional oath of office, it seems but reasonable to suppose that it would have been so provided in the act.

The judgment is reversed, with costs, and the cause remanded, for further proceedings in accordance with this opinion.